LEONARD J. THOMAS & *als. versus* THE ROCKLAND INS. CO.

Where the owners of a vessel have sustained loss by a peril insured against, and they design to abandon her, their communication to the underwriters, intended for a notice of an abandonment, should directly, and in terms, authorize a legitimate inference, that the owners designed thereby to abandon the vessel.

And, without such an abandonment, the underwriters will not be liable for an actual, or constructive, total loss, but only for a partial one, where the vessel was abandoned at sea by her master and crew, and was afterwards taken possession of by salvors, brought into port, libelled, and sold under an order in admiralty.

As to the mode of assessing damages in case of partial loss.

THIS is an action of ASSUMPSIT, on a policy of insurance of a vessel called the *A. Hooper,* dated Oct. 13, 1854. Action commenced Dec. 14, 1855. Plea, general issue, with a brief statement of matters relied on in defence.

The case came on for trial at April term, 1858, before CUTTING, J. It appeared in evidence that the vessel insured, while on a voyage, became distressed by the weather, and was abandoned at sea, by the captain and crew sometime in Dec. 1854; and, soon afterwards, was taken possession of by a part of the crew of another vessel, who, as salvors, brought her into the port of Boston.

There were two issues of fact made and submitted to the jury, who found and returned, (1) that the vessel was not cast away by the barratry of the captain; and (2) that the amount of actual repairs necessary to be made on the vessel, after the injury, to put her in as good condition as when insured, (ordinary wear and tear excepted, and exclusive of any salvage decreed,) was the sum of one thousand dollars.

Questions arising whether the plaintiffs are entitled to recover for a total or for a partial loss, and for what sum, the parties consented that the presiding Judge should report the evidence bearing on these questions, and the finding of the jury, for the consideration of the full Court, who are to enter up judgment as the legal rights of the parties require. It

appears, from the report of the case, that, on Dec. 21, 1854, after said vessel was brought into Boston in possession of the salvors, certain libels were entered against her and her cargo, for salvage, in favor of said rescuing crew and the owners of the vessel to which they belonged, in the Admiralty Court for the district of Massachusetts. The vessel and cargo were seized by the Marshal for the district, on the same day, by order of Court, and by him held until the 24th day of January, 1855, when, by order of Court, she was sold at auction, and the proceeds of sale were paid into Court. Blanchard, Sherman & Co., bid off the vessel for $2500; and the cargo sold for $124.

On the 25th day of the same January, salvage was decreed with costs, as prayed for, after paying which, there was left in said Court, from proceeds of sale of vessel, the sum of $1042,96; and from sale of cargo, $36,22. The said balances were paid over to the owners of vessel and cargo, respectively. On Dec. 18, 1854, Blanchard, Sherman & Co., acting for the owners, telegraphed from Boston to defendants, as follows: "Schooner A. Hooper has been brought in by salvors, abandoned — what shall be done?" On Dec. 23, 1854, acting for owners, said Blanchard wrote said defendants, as follows: " By direction of the owners of schooner 'A. Hooper,' who have a policy of insurance at your office on said vessel, as we understand from them, we telegraphed you, a few days ago, that said vessel had been abandoned at sea, and picked up and brought to this port, though in charge of salvors, asking what should be done, and requesting an answer.

" Not having received any answer, we have further to report that the salvors have brought a libel suit, granted by our Court of Admiralty; said libel being returnable on the 29th instant. It is thought by us that you had better be informed of these facts, so that you could take any course you might choose in regard to it. If you wish to make any defence to this libel suit, please inform us, as the owners have requested us to look to their interests in the matter. Any advice or orders to us will have our prompt attention."

The dispatch and letter were received in ordinary course, but the defendants paid no attention to them, and made no reply. After the loss, plaintiffs assigned their policy, as appears thereon, to Blanchard, Sherman & Co., who, on March 1, 1855, made a demand of payment of said defendants. Blanchard, Sherman & Co., paid $90 as counsel fees for plaintiffs, in defence of the salvage suits.

*J. A. Peters* argued for plaintiffs.

Plaintiffs claim to recover as for a *total* loss.

It was either an *actual* total loss, or a *constructive* total loss. Actual, because we abandon at sea, and the vessel was never restored to us in any way, but was to us totally lost. The cases, from *McMasters* v. *Shoalhed,* 1 Espinasse, 257, to the latest decisions, assume that, even if the vessel was not sunk or destroyed as a vessel, in order to prevent its being a total loss, there must be a *restoration.* In the case named, the Court say : — "If a ship had been sunk and weighed up again, *and if it was restored to the owners,*" there would be no actual total loss. But, in the case at bar, the vessel was lost at sea — taken by salvors, and by order of Court, sold, &c. Of course, as we have received the surplus of the sale, that should be deducted from the amount insured.

At all events, this was a constructive total loss — that is, the damage was more than half her value when repaired. She was sold for $2500; salvage, in round numbers, was $1500; repairs, $1000. In making up this amount, no deduction of one-third, new for old, is to be deducted from the salvage. *Sewall* v. *United States Ins. Co.,* 11 Pick. 90.

It is claimed, we made no abandonment, to the insurers, (defendants,) — none was necessary. We had nothing to abandon; she was not in our hands to abandon, not in our possession, nor could we possess ourselves. She was decreed to be in possession of salvors. It is said, we could have paid the liens and released her. We, however, were not obliged to do so. Another answer is, that she was sold before the amount of salvage was decreed. She was sold on the 24th of Janu-

ary, and salvage was decreed on the 25th. It was contested; we could not settle it; and the defendants knew the circumstances as well as the plaintiffs.

It has been decided in numerous cases, and fully, in this State, that when a master makes a sale of a vessel from the necessity of his situation and the circumstances, when she has become disabled, no abandonment to the insurers is necessary. *Prince* v. *Ocean Ins. Co.*, 40 Maine, 481; 2 Phillips on Insurance, 4th ed., page 244.

The doctrine is put upon the ground that, when a master has sold, there is nothing to abandon, and no benefit could result from it.

If, then, there is no reason to abandon when a master has sold, how much more reason not to abandon when a sale has been made without our power and *by authority of law.* What difference, whether the sale was authorized by *necessity*, which, as a *fact*, must be *proved*, or whether that necessity is established in another form by a judicial determination.

But, although the reason is very strong, we are also not *without authority.* *Storer* v. *Gray*, 2 Mass. 565.

In *Robinson* v. *Georges Ins. Co.*, 17 Maine, 131, WESTON, C. J., in a somewhat similar case to this, ruled, at *Nisi Prius*, that a recovery for a total loss could be had without an abandonment. The Court set aside the verdict, not upon that ground, but because the master had no authority to settle the salvage himself, and sell, instead of having it determined by a Court. A particular attention to the whole case will show that the marginal note is completely wrong, and may mislead. See also 12 Mass. 291.

But, if an abandonment was necessary, we contend one was stated or made, (1) by the dispatch, (2) by the letter.

No particular form is required, and no technical words need even be in writing. *Macy* v. *Whaling Ins. Co.*, 9 Met. 358.

It may be, "in express terms, or *by necessary implication.*" *Pierce* v. *Ocean Ins. Co.*, 18 Pick. 93.

Apply this language here, and, upon the circumstances and

.situation we *were* in, ourselves out of possession, and telegraphing that the vessel had been picked up abandoned.

The case was submitted without argument, on the part of the defendants.

The opinion of the Court was drawn up by

CUTTING, J.— Assuming that here was a constructive total loss, the *first* question presented is, was there an abandonment? It seems that no form of an abandonment has been prescribed by law, and it has been held that it need not be in writing; that any words which directly, and in terms, abandon the property insured to the underwriters, in consequence of a loss by a peril insured against, are sufficient to comply with the provisions of law. But the cause of the abandonment must be communicated to the underwriters, that they may judge whether to accept or not. 2 Phil. on Ins. (4th ed.) 384; *Macy & al.* v. *Whaling Ins. Co.*, 9 Met. 358. *Pierce* v. *Ocean Ins. Co.*, 19 Pick. 83.

Neither the telegraphic dispatch of Dec. 18, nor the letter of Dec. 23, 1854, directly, and in terms, authorize a legitimate inference that the owners designed thereby to abandon the vessel. It is true, they speak of the vessel as abandoned by the crew at sea, and brought into port by salvors, but no cause for such abandonment is assigned — no amount of damages or claims of salvors are stated or estimated. The dispatch only inquires as to "what shall be done," and the letter gives knowledge of the libel suits, and requests information if the underwriters wish to make any defence — information as necessary and proper to be given in case of a partial as a constructive total loss, since, if the former, the insurers would be interested in the amount of salvage to be recovered, and the expenses in defending against the same, and notice to them of the pendency of the suits might prevent any subsequent controversy in the adjustment of the salvage and costs, on settlement as for a partial loss.

But, *secondly*, it is contended that, if no abandonment was made, none was necessary, because the vessel was taken pos-

session of by the salvors, libeled and sold by authority of law, and the proceeds paid into Court, and that the sale, under such circumstances, is similar to that made by the master from necessity, as explained and illustrated in *Prince* v. *The Ocean Ins. Co.,* 40 Maine, 481, and cases there cited.

The circumstances constituting the necessity in those cases, and the one under consideration, are wholly dissimilar. In those cases, the vessels were in foreign ports and in peril from which they could not be extricated without an expense exceeding their real value. In this case, the vessel is brought into a home port within a short distance of the insurers, with whom the agents of the plaintiffs could have had daily communication, and yet the vessel was not abandoned and thereby subjected to the sole control of the defendants, subject, perhaps, to the salvors' lien. It is true that the vessel may have been in the custody of the law, and so she might have been, had the salvage claims been nominal in amount.

Our conclusion then, is, that the plaintiffs cannot recover for either an actual or constructive total loss, but may recover for a partial loss. The vessel, in the policy, was valued at $5000, on which was insured one half of that sum; consequently, by a rule of law, applicable to marine insurance, the parties are to share equally the loss. The expenses of repairs, as found by the jury, were $1000, from which one third is to be deducted, new for old, reducing them to $666,66, to which is to be added the salvage and expenses, including $90 counsel fees; viz., $1547,04, amounting in all to the sum of $2213,70, of which the plaintiffs are entitled to a judgment for one-half; viz., for $1106,85, and interest on that sum from the time it became payable, which, according to the terms of the policy, was sixty days after *proof and adjustment* of the loss. Interest in this case should be computed only from the date of the writ; viz., Dec. 14, 1855. Upon this subject, see 2 Phil. on Ins. 700, and cases cited.

TENNEY, C. J., RICE, APPLETON, HATHAWAY, and GOODENOW, J. J., concurred.

# CASES

IN THE

# SUPREME JUDICIAL COURT,

FOR THE

# WESTERN DISTRICT,

# 1858.

## COUNTY OF CUMBERLAND.